**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **RAYMOND E. LUMSDEN,** | § | |
| **TDCJ No. 02109472,** | § | |
| | § | |
| **v.** | § | **W-20-CV-630-ADA** |
| | § | |
| | § | |
| **LORI DAVIS, et al.** | § | |

## ORDER

Before the Court are Plaintiff Raymond E. Lumsden's complaint filed pursuant to 42 U.S.C. § 1983 (ECF No. 1); Defendants Davis, Lofton, Akwitti, Clayton, Smith, Riley, and Pederson's Motion to Dismiss and Motion for Summary Judgment (ECF Nos. 16, 28), Plaintiff's Response in Opposition (ECF Nos. 34), Defendants' Reply (ECF No. 36), and Plaintiff's Sur-reply (ECF No. 40); Plaintiff's Motion to Compel (ECF No. 35) and Defendants' Response (ECF No. 37); and Plaintiff's Motion to Take Photographic Images and to Appoint Counsel (ECF No. 41). Plaintiff is proceeding pro se and in forma pauperis. Upon careful consideration of the parties' motions, the Court dismisses Defendants' Motion to Dismiss, grants Defendants' Motion for Summary Judgment, and denies Plaintiff's pending motions.

## I. Statement of the Case

Plaintiff is in custody at the Hughes Unit of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID). Plaintiff alleges that he arrived at the Hughes Unit in June 2019 and was exposed to its "deplorable" living conditions. He alleges that there is a strong smell of sewer gas throughout the Unit; the cells are covered in feces, dried blood, mold, and rust; there is an uncontrolled infestation of rats, cockroaches and ants in the cells and in the kitchen; there is chipped paint throughout the Unit; prisoners are not provided with any cleaning supplies and the janitorial staff only uses water for cleaning; the Hughes Unit does not separate mentally-ill offenders from the general population; and there is a severe staffing shortage which has resulted in a lack of maintenance and deplorable sanitation. Plaintiff alleges these conditions have exacerbated his chronic asthma, as well as caused him to suffer migraines, burning eyes, sore throat, bloody nose, rashes, and dizziness. Plaintiff also alleges that, after he complained about the living conditions, Defendants conspired to retaliate against him by transferring him to a different Unit.

Plaintiff claims violations of his Eighth Amendment rights based on his conditions of confinement and the Defendants' deliberate indifference to these conditions and their serious risk to Plaintiff's health and safety. He also claims conspiracy to retaliate. Plaintiff names the following defendants in both their official and individual capacities: Lorie Davis, TDCJ-CID Director; Cynthia Lofton, Hughes Unit Warden; Chimdi Akwitti, Hughes Unit Assistant Warden; Nick Clayton, Hughes Unit Assistant Warden; Major Beau Smith; Jessica Riley; and H.M. Pederson. He seeks declaratory and injunctive relief and damages.

(ECF No. 1.)

After Defendants filed a Motion to Dismiss (ECF No. 16), the Court converted Defendants' motion into a motion for summary judgment (ECF No. 22). Defendants thereafter filed a motion for summary judgment, arguing they are entitled to Eleventh Amendment immunity and qualified immunity. (ECF No. 28.) In support of their motion, Defendants filed 200 pages of Plaintiff's medical records from June 2019 through July 2020 under seal. (ECF No. 30.)[1] Plaintiff filed a response in opposition (ECF No. 34), to which Defendants replied and Plaintiff filed a sur-reply (ECF Nos. 36, 40). Plaintiff also filed a Motion to Compel, which Defendants oppose (ECF Nos. 35, 37), as well as a Motion to Take Photographs and/or Appoint Counsel (ECF No. 41).

## II. Factual Background

Upon arriving at the Hughes Unit in June 2019, Plaintiff was confronted with the Unit's "deplorable living conditions." (ECF No. 1 at 3.) His initial placement was in the transit overflow section which smelled strongly of sewer gas—which Plaintiff alleges is toxic to humans—as well as feces. The fumes immediately irritated Plaintiff's chronic asthma. The cell Plaintiff was assigned to had fecal matter, dried blood, mold, and rust all over the walls; the floor was covered in cockroaches; and the toilet and sink did not work until they were repaired three hours later.

Plaintiff alleges mold and rust all over the Hughes Unit, and the smell of sewer gas is everywhere but is especially severe in the cells and shower areas. He states the sewer

---

[1] Because Defendants filed Plaintiff's confidential medical records under seal, the Court will refer only to general facts from this pleading.

gas has caused him to seek treatment for burning eyes, sore throat, runny and bloody nose, migraines, and dizziness, and has worsened his chronic asthma. Plaintiff's medical records show he has been diagnosed with mild persistent asthma, and that in June 2020, he complained of burning, red eyes, sore throat, and headaches, and requested eye drops. He stated that his symptoms were due to the unsanitary conditions and sewer gas. The next month Plaintiff said the eye drops and medication were helping but noted "the deplorable conditions makes it a futile battle."

Plaintiff states that the cells are infested with cockroaches, ants, rodents, and spiders, and that the Unit's pest control is insufficient. Plaintiff filed a grievance complaining about a "major sanitation, roach, mice and mold problem" and that he had never seen pest control spray in the Unit. He also complained there were roaches and mice everywhere and requested chemicals to clean his cell along with the elimination of pests/rodents. (ECF No. 1-2 at 7-8.) Defendant Clayton responded "[p]est control sprays on a scheduled basis. Daily sanitation of housing areas is conducted to prevent unsanitary conditions and offender should be receiving chemicals to clean their cells." (*Id.*) In his Step 2 grievance, Plaintiff stated he has never seen pest control spray, has never received chemicals to clean his cell, the showers were only cleaned with water, and there was "mold, filth, roach infestation, smell/odor, and garbage piled on the floors!" Defendant Riley responded that Plaintiff's concerns had been addressed in his Step 1 grievance. (*Id.* at 5-6.)

Plaintiff alleges there is chipped paint all over the prison, which causes him to break out into a rash and itch. In June 2020, Plaintiff sought medical treatment for

persistent itching and was provided two lotions. Plaintiff filed a grievance complaining about the maintenance issues in Hughes, stating the chipped paint gets into food and causing him to break out in a rash. (*Id.* at 15-16.) On a Grievance Investigation Worksheet, Patricia Burton wrote "The interiors of most of the buildings are in poor condition. The sanitation efforts are insufficient. Take into consideration that we are short staffed [and] actively correcting our plethora of deficiencies." (*Id.* at 2.) In response to Plaintiff's grievance, Defendant Akwitti noted "[s]taff agree[] with your assessment for the need to paint. . . . Staff is fully aware there is a need to correct the deficiencies and are working toward making the situation better." (*Id.*) Plaintiff filed a Step 2 grievance, where he alleged Akwitti and the Unit administration were indifferent to the maintenance problem; Defendant Pederson denied the grievance, stating there was no conclusive evidence of a policy violation. (*Id.* at 14.) Plaintiff alleges that in June 2020, he spoke to Akwitti about the maintenance issues, and Akwitti told him "[i]t will be easier to just send you to another unit for us" and that the Hughes administration had discussed transferring Plaintiff. (ECF No. 1 at 6.)

In December 2019, Plaintiff filed a Step 1 grievance stating that the Hughes Unit kitchen was violating TDCJ policy by not provide balanced, nutritious meals to the prisoners. Plaintiff alleged ninety percent of the meat is stolen and sold; prisoners are served insufficient portions of the same food without variety; the food trays are full of grease because they are not washed with soap. Akwitti responded saying "[a]ppropriate serving utensils are used to ensure that offenders are receiving the adequate serving amount." (ECF No. 1-2 at 9-10.) Plaintiff did not file a Step 2 appeal.

Plaintiff states the Hughes Unit does not separate mentally-ill prisoners from the general population, which poses a health risk for him. Plaintiff filed a grievance in September 2019, stating a psychotic prisoner had attacked other prisoners at random while yelling demonic statements, and that an Officer Kellar had witnessed the event but did nothing. Plaintiff then asked his family to report the issue to the Warden. Thereafter, Akwitti confronted Plaintiff, saying "If you have your family call again, or threaten me with Lorie Davis, I'll lock you up under 12 [Building] and nobody will find you." Defendant Clayton responded to this grievance, stating "It appears that the incident was handled appropriately. There is no evidence to support your allegations of substandard duty performance. Further, no evidence was found to support your claims against Assistant Warden Akwitti." (*Id.* at 11-12.) Plaintiff did not file a Step 2 appeal.

Finally, Plaintiff alleges the Hughes Unit is understaffed. He filed a grievance on the matter, wherein he complains that none of the prisoners received their four hours of "non-programmatic out-of-cell" time. In response, Clayton stated that the "Administration is aware of the issues with offenders not getting the full 4 hours for recreation due to a staff shortage." (*Id.* at 19-20.) Plaintiff further alleges this staff shortage has resulted in the lack of maintenance, the deplorable sanitation and cleaning, the failure to repaint areas that are rusty and moldy, and an increase in prison violence. Plaintiff attached to his complaint several pages from a "Prison Legal News" article discussing mold in jails, though none specifically related to the Hughes Unit (*id.* at 22-25), a printout from a website entitled "Side Effects of Sewer Gas Inhalation" (ECF No. 1-3 at 2), and a printout of his medication list which includes an antihistamine and eye drops (*id.* at 3).

### III. Discussion & Analysis

1. Summary Judgment

On a motion for summary judgment, a court will render judgment if the evidence shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). When a motion for summary judgment is made and supported, an adverse party may not rest upon allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); Fed. R. Civ. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. The moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party cannot rely on general allegations but must produce "specific facts" showing a genuine issue for trial. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *See James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990). The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *See id.* (citing *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

2.  Qualified Immunity

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). A government official performing a discretionary function is shielded from liability for civil damages so long as his actions do not violate a clearly established right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown*, 623 F.3d at 253. The plaintiff must therefore present evidence sufficient to create a genuine dispute of material fact as to whether (1) the official's conduct violated a constitutional right of the plaintiff, and (2) the constitutional right was clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. *See id.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). For the right to be clearly established, the plaintiff

must show that defendants had "'fair warning" that their specific actions were unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (relevant right is not defined at high level of generality; rather, "existing precedent must have placed the statutory or constitutional question beyond debate").

In considering a qualified immunity defense, the Court must view the evidence in the light most favorable to the non-movant and draw all inferences in the non-movant's favor, *see Rosado v. Deters*, 5 F.3d 119, 122-23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

3.   Eleventh Amendment Immunity

Pursuant to the Eleventh Amendment, federal courts are without jurisdiction over suits against a state unless that state has waived its sovereign immunity or Congress has clearly abrogated it. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). A federal court may, however, "enjoin a state official in his official capacity from taking future actions in furtherance of a state law that offends federal law or the federal Constitution." *Moore*, 743 F.3d at 963 (citing *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 269 (1997)). A suit against a state official in their official capacity is no different than a suit against the state itself. *Green v. State Bar of Tex.*, 27 F.3d 1083, 1087 (5th Cir. 1994). A state's sovereign immunity under the Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such a claim is essentially against the state itself. *Id.* Accordingly, Defendants

9

are entitled to Eleventh Amendment immunity on Plaintiff's claims against them in their official capacities for monetary relief.

### 4. Conditions of Confinement and Deliberate Indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. CONST. amend. VIII. Prison officials must provide humane conditions of confinement, ensure that inmates receive adequate food, clothing, shelter, and medical care, and take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" violate the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 8–10 (1992); *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).

The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement. First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. *Hudson,* 503 U.S. at 8. The challenged condition must be "extreme." *Id.* at 9. While an prisoner "need not await a tragic event" before seeking relief, *Helling v. McKinney,* 509 U.S. 25, 33 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. *Id.* at 35. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." *Rhodes,* 452 U.S. at 347.

Second, the prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the challenged condition. *Hudson,* 503

U.S. at 8. The proper standard is that of deliberate indifference. *Wilson v. Seiter,* 501 U.S. 294, 303 (1991). Negligence does not suffice to satisfy this standard, *id.* at 305; rather, "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834.

It is well settled that "the Constitution does not mandate comfortable prisons," and that prison conditions may be "restrictive and even harsh" without running afoul of the Eighth Amendment. *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[T]he Eighth Amendment protects prisoners from conditions of confinement that constitute threats to their health or safety, but not against those that cause mere discomfort or inconvenience. *Garcia v. Currie*, 674 F. App'x 432, 433 (5th Cir. 2017) (citing *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989)).

Here, Plaintiff alleges the conditions at the Hughes Unit are "deplorable" and constitute a public health hazard to the prisoners. The conditions allegedly include poorly maintained buildings, the lack of pest control, the smell of sewer gas, a lack of cleaning supplies, staffing shortages, and the mixing of mentally-ill prisoners with the general population.

As an initial matter, the Court notes that Plaintiff has failed to support most of his allegations with any evidence outside of the grievances attached to his complaint.[2]

---

[2] Plaintiff references complaints he alleges correctional staff made about the conditions at Hughes Unit in his response in opposition to Defendants' summary judgment motion, but fails to attach the documents to his pleading. As a result, the Court has not considered these unverified allegations in deciding Defendants' summary judgment motion. *See Celotex Corp.*, 477 U.S. at 324 (to survive summary judgment, non-moving party must

Further, while Plaintiff alleges these conditions are toxic and pose a public health risk, between June 2019 and July 2020, Plaintiff had four sick calls for symptoms he alleged were caused by poor sanitation, and was treated with eye drops, anti-itch lotion, and antihistamines. While Plaintiff alleges the sewer gas is toxic to humans, there is nothing in the record that shows he has been harmed by it. *See Coon v.* Ledbetter, 780 F.2d 1158, 1160 (5th Cir. 1986) (persons who claim a deprivation of constitutional rights are required to prove some violation of their personal rights). The same is true of Plaintiff's claims about the mixing of mentally-ill prisoners with the general population, and the alleged understaffing of the Hughes Unit: he might find it disagreeable, but fails to allege or show how he has been personally harmed by these things. As a result, the Court cannot conclude that Plaintiff has been denied the "minimal measure of life's civilized necessities" or that these conditions exposed Plaintiff to a substantial risk of serious harm to his health or safety. *See Rhodes*, 452 U.S. at 347 ("To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.")

Even assuming the conditions were sufficiently serious, however, Plaintiff has also failed to show that Defendants "acted with a sufficiently culpable state of mind" with regard to the challenged conditions. *Hudson*, 503 U.S. at 8. To succeed on a conditions-of-confinement claim, Plaintiff must show that Defendants were deliberately indifferent to a substantial risk of serious harm. *Farmer*, 511 U.S. at 828. "Deliberate indifference is

---

"go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'")

12

an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837. Although it appears some Defendants were aware that the interior of the Hughes Unit was in poor condition, they responded to Plaintiff's grievances by saying they were working on remedying the issues. Further, there is no evidence in the record suggesting Defendants were ever personally involved in the conditions of which Plaintiff complains. *See Mouille v. City of Live Oak,* 977 F.2d 924, 929 (5th Cir.1992) (for a supervisory official to be held liable under § 1983, they must "affirmatively participate in acts that cause constitutional deprivation" or "implement unconstitutional policies that causally result in plaintiff's injury."); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action"). There is no other evidence to support the conclusion Defendants were aware of facts that a substantial risk of serious harm existed and drew the inference and failed to take action. Indeed, the summary judgment evidence indicates that Defendants have actively sought to improve conditions. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claims.

5. Conspiracy to Retaliate

Plaintiff alleges Defendants conspired to retaliate against him by threatening to transfer him to a different Unit if he did not stop filing grievances and complaining. "In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the

existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). To prove retaliation, Plaintiff is required to show a "retaliatory adverse act." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (elements of a retaliation claim are "(1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation."). Plaintiff alleges only that Defendants considered retaliating against him by transferring him to another Unit, and that Akwitti threated to "bury him" if Plaintiff did not stop complaining. However, threatening language and verbal harassment do amount to a constitutional violation. *See Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("[M]ere threatening language and gestures of a custodial Defendant do not, even if true, amount to constitutional violations"); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973) (the use of words, no matter how violent, does not comprise a § 1983 violation). In other words, there is no evidence whatsoever of any retaliatory adverse act, because while Defendants may have threatened to retaliate by transferring Plaintiff, they did not do so. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's retaliation claim.

6. <u>Motions to Compel, Take Photographs</u>

After Defendants filed their summary judgment motion, Plaintiff moved to compel discovery, asking Defendants produce the following:

1. Whether the defendants communicated with the Unit Risk Manager, Patricia Burton about the complained of issues, since it is her duty and responsibility to protect the "risks" related to inmates.

2. Whether any of the defendants expressed anything to other employees that will help to determine whether or not the defendants are entitled to immunity.

3. Whether Risk Manager Burton was transferred or disciplined for her criticism of the unit sanitation and health conditions, and for supplying photos to support her assertions in her weekly reports to TDCJ in Huntsville. This will also assist to defeat the qualified immunity claims of defendants.

(ECF No. 35 at 3). In response, Defendants argue the information Plaintiff requests is outside the scope of discovery, not properly requested under Federal Rule of Civil Procedure 34, and that Plaintiff failed to resolve his complaint with Defendants prior to seeking the Court's intervention. (ECF No. 37.) In his Motion to Take Photographs, Plaintiff requests the Court supply him with a disposable camera to take pictures of the Hughes Unit, or alternatively, appoint him counsel. (ECF No. 41.)

Discovery in this case was limited to that which was necessary to address Defendants' entitlement to qualified immunity. (ECF No. 26.) Neither Plaintiff's Motion to Compel or his Motion to Take Photographs are "narrowly tailored to uncover only those facts needed to rule on the immunity claim." *See Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987). These motions are therefore denied. Even if Plaintiff had received the discovery he requested, it would not have altered the analysis of the Court. Further, to the extent Plaintiff is also seeking the appointment of counsel, that request is also denied. *See Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982).

**IV. Conclusion**

It is therefore **ORDERED** that Defendants' Motion to Dismiss (ECF No. 16) is **DISMISSED**, Defendants' Motion for Summary Judgment (ECF No. 28) is **GRANTED**, and Plaintiff's Motion to Compel and Motion to Take Photographs (ECF Nos. 35, 41) are **DENIED**.

**SIGNED** on March 12, 2021

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

16